# Robert J. Sciglimpaglia, Jr.
*Attorney at Law*
*101 Merritt 7 Corporate Park*
*Suite 300*
*Norwalk, Connecticut 06851*
*Phone: (203) 663-2803*
*Fax: (203) 505-6249*
*robscig@usa.net*
*TAX ID #: 06-1438026*

*Stamford Office:*                                                                     *New York Office:*
*Soundview Plaza*                                                      *1177 Avenue of the Americas*
*1266 E. Main Street*                                                *Fifth Floor*
*Suite 700R*                                                                *New York, NY 10036*
*Stamford, CT 06902*                                            *Phone: (646) 688-4361*
*Phone: (203) 989-9171*                                    *Fax: (646) 365-3364*

*Certified Worker's Compensation Specialist*                            *Also Admitted in New York*

July 28, 2021

**VIA ECF**
The Honorable Kenneth M. Karas
United States District Court
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150

    Re:    *Standing v. ByteDance, Inc., and Bytedance E-Commerce Inc., et al.,*
                **No. 7:21-cv-04033-KMK (S.D.N.Y 2021)**

Dear Judge Karas:

I represent Plaintiff Beverly Standing, a/k/a Bev Standing, in the above-captioned action. Pursuant to your Honor's Individual Practices, I submit this letter in response to Defendant ByteDance, Inc.'s ("ByteDance") July 7, 2021, letter to the Court requesting a pre-motion conference to move for an order dismissing Plaintiff's First Amended Complaint (ECF No. 9, "FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

In its letter to the Court, ByteDance moves for a dismissal order specifically on the grounds that Plaintiff's copyright claim fails for lack of registration, and generally that Plaintiff's remaining claims are preempted by the Copyright Act and independently fail as a matter of law.

I specifically request permission of the Court to amend, in part, Plaintiff's FAC so that it may attach recently obtained copyright registration documentation of Plaintiff's voice files.[1] Plaintiff's copyright registration certificate has an effective date of March 31, 2021 (Registration No. SRu 1-466-956). The proposed amendment satisfies Defendant's first ground for dismissal as Plaintiff's copyright certificate was fully registered by the Copyright Office prior to the time

---

[1] Counsel for Plaintiff received the Copyright Registration certificate of Plaintiff's voice files on July 22, 2021.

of filing suit. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC,* 139 S. Ct. 881, 892 (2019). I also generally request permission to amend other sections of the FAC, as necessary. If it is acceptable by your Honor, I would request a deadline of August 31, 2021, as the deadline for amendment.

Plaintiff respectively disagrees with all other arguments put forth by Defendant ByteDance as detailed below.

### I. Plaintiff's Right of Publicity claim is NOT preempted by the Copyright Act or as a matter of law

Defendant first attempts to argue that Plaintiff's right of publicity claim fails because it is statutorily preempted by § 301 of the Copyright Act. Defendant relies heavily on the Second Circuit's holding in *In re Jackson,* 972 F.3d 25 (2d Cir. 2020), but omits the pertinent parts of the court's ruling. The Second Circuit stated time and again that implied preemption will not serve to bar a state law claim when the "state-created right vindicates a substantial state law interest, *i.e.* an 'interest [] outside the sphere of congressional concern in the [copyright] laws.'" *Id.* at 37, quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 109 S.Ct 971 (1989). In support of its analysis, the Second Circuit noted that prominent copyright scholars have identified the prevention of consumer deception, privacy protection and the safeguard of reputational harms as distinct state law interests not barred by implied preemption. *Id.* at 35. Although the voice and likeness are Plaintiff's, users on Defendant's platform are able to determine what words are spoken in Plaintiff's voice and in several instances this has resulted in videos depicting the Plaintiff's voice using foul and offensive language, causing direct reputational harm to Plaintiff. (FAC ¶ 9). The safeguard of the Plaintiff's reputation is a substantial common law interest separate and apart from Plaintiff's copyright infringement claims.

Defendant next argues that Plaintiff's right of publicity claim fails because she has not established that her voice was used to further a commercial purpose.[2] TikTok is a for-profit company that reported over $34.3 billion in revenue for the year 2020.[3] The use of Plaintiff's voice (and likely many others) without Plaintiff's consent is the main way in which TikTok drives users and advertisers to its platform which, in turn, has allowed TikTok to become one of the most profitable online social media platforms in the world. Further, Plaintiff's voice was not only accessed by user's utilizing "free" platform services, but also by advertisers on Defendant's application.

Defendant's third point against Plaintiff's right of publicity claim also fails upon a simple analysis of the facts. Defendant cites persuasive case law with *Joseph v.*

---

[2] The elements of the tort of wrongful appropriation of personality are: (1) use of another's personality (2) without consent (3) for commercial gain. *Hategan v. Farber,* 2021 ONSC 874 (CanLll).

[3] "TikTok Owner ByteDance's Revenue Surged 111% in 2020, Records 1.9 Billion Users." Arjun Kharpal, CNBC, June 17, 2021.

*Daniels,* 1986 CanLll 1006 (BC SC)[4], but fails to acknowledge the deeply personal connection that a person has with their own voice. Not only are all voices unique, but they also carry a great deal of significance in analyzing a person's identity and personality. Plaintiff is a very well-known voice actress in Canada and around the world. Indeed, it was Plaintiff who was easily able to recognize her voice while using the TikTok application, and many of her colleagues contacted her notifying her that her voice was being used. It is entirely likely that other viewers also recognize Plaintiff's voice when viewing advertisements or user videos on TikTok.

Defendant further asserts that Plaintiff's claims under the Lanham Act fail as Plaintiff's trademark claim is preempted by Plaintiff's copyright infringement claim. Defendant cites, in part, to *Oliveira v. Frito-Lay, Inc.,* 251 F.3d 56 (2d Cir. 2001), when asserting this argument. Upon review of the case it appears that we are reading two completely different opinions. The Court in *Oliveira* actually stated "[t]he fact that musical compositions are protected by the copyright laws is NOT incompatible with their also qualifying for protection as trademarks…" *Id* at 61. The *Oliveria* Court's dismissal of the trademark claim stemmed from the precedent established in *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc.,* which centered on the concept that a musical composition could not serve as a trademark for itself, not the preemption of one claim over another. 228 F3d 56 (2000). Although it may be unusual for a claim to survive under both the law of copyright and trademark, it is not impossible, and the social media and technological advancements associated with an application such as TikTok make a case such as the one presented by the Plaintiff ripe for addressing such new and distinguishable arguments around the areas of trademark and copyright law.

    **II.    <u>Plaintiff's Lanham Act claim is NOT preempted</u>**

Defendant goes onto argue that Plaintiff's Lanham Act claim is barred by the First Amendment's protection of expressive works. In support of its argument, Defendant points to the Second Circuit's "*Rogers* Test", which was created in 1989 to balance the First Amendment's interest in free expression against the public's interest to be free from consumer confusion about endorsements and affiliations. *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989). Plaintiff agrees with Defendant that a Lanham Act claim is inapplicable if the use of the identifying material is (1) "artistically relevant" to the work and (2) not "explicitly misleading" to the source of the content of the work. *Brown v. Showtime Networks, Inc.,* 394 F.Supp.3d 418 (S.D.N.Y. 2019). However, Plaintiff grossly disagrees with Defendant's application of the *Rogers* Test to the facts at hand. Although, "[t]he threshold for 'artistic relevance' is purposely low and will be satisfied unless the use has almost no artistic relevance to the underlying work", Plaintiff does not see even this low threshold as a deterrence to her Lanham Act claim. *Id.* at 442 (quoting *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.,* 868 F.Supp. 2d 172 (S.D.N.Y. 2012)). Clearly the use of Plaintiff's female

---

[4] In *Joseph,* the Court ruled that a cause of action for wrongful appropriation of personality when a viewer would not be able to associate or identify the plaintiff with a picture of the plaintiff's torso. 1986 CanLll 1006 (BC SC).

computer voice is artistically relevant to the videos generated by TikTok's TSS feature. Further, Defendant wrongly assumes that the public at large is familiar enough with TikTok to know whether or not Plaintiff endorses such content created using her voice. In fact, TikTok is an application that only came to popularity in the last few years and is used primarily by adolescents and young adults. It is entirely plausible to believe that those unfamiliar with the application could view such a video and wrongly assume that Plaintiff is endorsing the content, causing further injury to the Plaintiff's reputation.

Respectfully submitted,

*Robert J. Sciglimpaglia, Jr.*
Robert J. Sciglimpaglia Jr, Esq.